Jordan Herzog (IL Bar No. 6216236)
  jherzog@pfs-law.com
Jonathan S. Goodman  (IL Bar No. 6256015)
  jgoodman@pfs-law.com
PATZIK, FRANK & SAMOTNY LTD.
150 S. Wacker Drive, Suite 1500
Chicago, Illinois 60606
Telephone: (312) 551-8300
Facsimile: (312) 551-1101

Russell M. Selmont (CA Bar No. 252522)
  rselmont@ecjlaw.com
ERVIN COHEN & JESSUP LLP
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for Defendants
NEATFREAK GROUP CORP.,
NEATFREAK GROUP, INC. and TARGET CORP.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SEVILLE CLASSICS, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>NEATFREAK GROUP, INC., a Canada corporation; NEATFREAK GROUP CORP, a Delaware corporation; TARGET CORPORATION, a Minnesota corporation; and DOES 1 – 10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:15-cv-06237-SJO-AS<br><br>**DEFENDANTS NEATFREAK GROUP CORP.'S AND NEATFREAK GROUP INC.'S JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF SEVILLE CLASSICS, INC.'S MOTION TO DISMISS**<br><br>Hearing: March 28, 2016 at 10:00 a.m.<br><br>Hon. S. James Otero |

## **Table of Contents**

Introduction ................................................................................................ 1

Background Facts and Law Relevant to Seville's Motion and this Opposition ..... 2

    A.   The America Invents Act and Transition Patent Applications .......... 2

    B.   The USPTO's Regulations for Transition Applications
        under the AIA ................................................................................. 3

    C.   The Patent Applicant's Duty of Disclosure to the USPTO
        in Relation to Transition Applications ............................................. 5

    D.   The Pleading Standards for Inequitable Conduct ............................. 6

Argument ................................................................................................... 7

    A.   Neatfreak has Adequately Pled its Counterclaim
        for Inequitable Conduct .................................................................. 7

       1.  The Key Difference between the '357 Patent and its Priority
           Application ................................................................................ 8

       2.  Neatfreak's Counterclaims Adequately Plead the "Who"
           and "When" of the Material Misrepresentations and Omissions
           before the USPTO ..................................................................... 11

       3.  Neatfreak's Counterclaims Adequately Plead the "What" and
           "Where" of the Material Misrepresentations and Omissions
           before the USPTO ..................................................................... 12

       4.  Neatfreak's Counterclaims Adequately Plead the "How" of the
           Material Misrepresentations and Omissions before the USPTO ..... 14

       5.  Seville's Arguments Concerning the "How" Requirement of
           *Exergen* are all Unavailing ...................................................... 15

       6.  Neatfreak's Counterclaims Adequately Plead the Scienter
           Requirement for a Claim for Inequitable Conduct ....................... 21

    B.  Count II of Neatfreak's Counterclaim Should not be Dismissed With
        Prejudice ...................................................................................... 24

Conclusion ................................................................................................ 24

# **Table of Authorities**

## **Cases**

*Akzo N.V. v. U.S. International Trade Com.*,
  808 F.2d 1471, 1482 (Fed. Cir. 1986) ................................................. 20

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
  977 F.2d 1555, 1574-75 (Fed. Cir. 1992) ........................................... 19

*Delano Farms Co. v. California Table Grape Comm'n*,
  655 F.3d 1337, 1350 (Fed. Cir. 2011) ............................................... 23

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009…………………….…………………7,  11-15, 21-23

*Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008) .................. 20

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001) ..................................... 6

*Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223 (Fed. Cir. 2007) ...................... 14

*In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013) ............................................ 17

*Therasense, Inc. v. Becton, Dickenson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ......................................................... 23

*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) .............................. 19

*Young v. Lumenis, Inc.*, 492 F.3d 1336 (Fed. Cir. 2007) ...................................... 20

## **Statutes**

35 U.S.C. § 102 ....................................................................................2, 4, 17

35 U.S.C. § 103 .......................................................................................4, 17

35 U.S.C. § 112 ............................................................................................ 17

35 U.S.C. § 120 ............................................................................................ 17

## **Other Authorities**

Fed. R. Civ. P. 12 .......................................................................................... 6

Fed. R. Civ. P. 9 ............................................................................................ 6

37 C.F.R. §1.78 ...................................................................4, 5, 6, 11, 16, 20, 22

37 C.F.R. § 1.153 ....................................................................................... 12

M.P.E.P. § 201.07 ................................................................................... 2, 12

M.P.E.P. § 1505.04 ........................................................................................ 18

77 Fed. Reg. 43,745 .................................................................................... 4, 21

78 Fed. Reg. 11040-41 ............................................................................ 5, 6, 21

Defendants Neatfreak Group Corp. and Neatfreak Group, Inc. (collectively, "**Neatfreak**"), by and through their undersigned counsel, submit their joint memorandum of points and authorities in opposition to plaintiff Seville Classics, Inc.'s ("**Seville**") motion to dismiss Neatfreak's inequitable conduct counterclaim and to strike the corresponding affirmative defense ("**Motion to Dismiss**", ECF No. 53).

## Introduction

As pled in Neatfreak's Joint First Amended Counterclaims ("**Counterclaims**", ECF No. 44), Seville's patent attorney, who prepared and prosecuted the application resulting in U.S. Patent No. D724,357 (the "**'357 Patent**"), knowingly inserted new subject matter within this application that was not present within or otherwise supported by the parent application to which it claimed priority.  The same patent attorney then intentionally failed to file a required statement to the U.S. Patent and Trademark Office ("**USPTO**") which would have notified the USPTO of this addition of new subject matter.  This omission ensured that the application for the '357 Patent would improperly be afforded the earlier filing date of its parent application as it underwent examination.  As a result of this misrepresentation, the priority parent application was not cited by the USPTO examiner as prior art to the application for the '357 Patent.  But-for this material misrepresentation to the USPTO, the '357 Patent would not have been granted, but rather would have been finally rejected in view of the teachings of its parent application.

In their Counterclaims, Neatfreak includes detailed factual allegations— which for the purposes of this motion are to be accepted as true—supporting each

required element of its Count II[1], seeking a declaratory judgment that U.S. Patent the '357 Patent is unenforceable due to acts and omissions constituting inequitable conduct before the USPTO.[2]  These factual allegations clearly meet all of the Federal Circuit's heightened pleading standards for inequitable conduct. In arguing to the contrary, Seville's Motion to Dismiss: (1) fails to address numerous allegations of Neatfreak's Counterclaims, including the key allegation that Seville failed to comply with USPTO regulations requiring applicants to notify the UPSTO  via a written certification whenever a "transition application" claims subject matter not disclosed in a parent application; (2) cites inapplicable case law regarding the materiality of Seville's omissions and misrepresentations; and (3) improperly conflates the Federal Circuit's initial pleading standards for inequitable conduct with the standard for ultimate proof at trial.  Accordingly, Seville's Motion to Dismiss should be denied.

**Background Facts and Law**
**<u>Relevant to Seville's Motion and This Opposition</u>**

**A.    The America Invents Act and Transition Patent Applications.**

The Leahy-Smith America Invents Act ("**AIA**") amended the patent laws pertaining to the conditions of patentability, converting the United States patent system from a ''first to invent'' system to a ''first inventor to file'' system.  35 U.S.C. § 102.  On March 16, 2013, before the filing date of the application for the '357 Patent, the first-inventor-to-file provisions of the AIA became effective. Manual of Patent Examination and Procedure ("M.P.E.P.") § 201.07, Ninth

---

[1]Notably, Seville has not moved to dismiss Count I of Neatfreak's Counterclaim, seeking a declaratory judgment that another patent of Seville, U.S. Pat. No. D703,468, is likewise unenforceable due to acts and omissions constituting inequitable conduct before the USPTO.

[2] As Neatfreak's corresponding amended ninth affirmative defense incorporates by reference Paragraphs 14 and 32-59 of Neatfreak's Counterclaims, the arguments herein establishing that Count II of the Counterclaims are adequately pled apply equally to this affirmative defense.

Edition, November 2015.  Since that date, U.S. patent applications are prosecuted and examined under one of two legal frameworks: the first-to-invent provisions of the Patent Act (referred to as pre-AIA law) and the first-inventor-to-file provisions of the Patent Act (referred to as AIA law).

There are three possible scenarios that may arise in terms of which framework to apply to the examination of a particular patent application. In the first scenario, applications filed before March 16, 2013 are subject to examination under pre-AIA law.  In the second scenario, applications filed after March 16, 2013 that do not claim priority to or the benefit of applications filed before March 16, 2013 are subject to examination under AIA law.

In the third scenario, designated by the USPTO as a "transition application", an application is filed after March 16, 2013 but claims priority to and the benefit of an application filed before March 16, 2013.  If a transition application claims new subject matter that is not disclosed in a priority parent application filed before March 16, 2013, then it is subject to examination under AIA law, and the disclosure of the priority parent application is available as prior art to the transition application under the AIA.  If a transition application does not claim new subject matter that was not disclosed in its priority parent application, then it is subject to examination under pre-AIA law, and the disclosure of the priority parent application is not available as prior art to the transition application.

**B.     The USPTO's Regulations for Transition Applications under the AIA.**

The USPTO recognized that, in the examination of transition applications, it simply is not feasible to require patent examiners to determine if the subject matter of each claimed invention is fully supported by the priority patent application (and hence subject to examination under pre-AIA law), or if the

claimed invention is directed to new matter, not disclosed in the parent application (and hence subject to examination under the AIA). Thus, the USPTO issued regulations placing the onus upon the patent applicant to furnish a written statement to the USPTO indicating when a transition application claims new matter, and is therefore subject to examination under pre-AIA or AIA law. The regulations state, in pertinent part:

> "If a nonprovisional application filed on or after March 16, 2013, claims the benefit of the filing date of a provisional application filed prior to March 16, 2013, and also contains, or contained at any time, a claim to a claimed invention that has an effective filing date as defined in § 1.109 that is on or after March 16, 2013, the applicant must provide a statement to that effect …"

37 C.F.R. §1.78(a)(6).

In initially promulgating this proposed regulation, the USPTO stated following regarding the policy behind the statement to be made under 37 C.F.R. §1.78(a)(6), and the USPTO's reliance upon these statements:

> This information is needed to assist the Office in determining whether the application is subject to 35 U.S.C. 102 and 103 as amended by the AIA or 35 U.S.C. 102 and 103 in effect on March 15, 2013. As discussed previously, <u>if the Office must determine on its own the effective filing date of every claim ever presented in an application filed on or after March 16, 2013, that claims priority to or the benefit of a provisional application filed prior to March 16, 2013, examination costs will significantly increase</u>.

77 Fed. Reg. 43,745 (proposed July 26, 2012) (discussing proposed rule to be codified at 37 C.F.R. §1.78). (Emphasis added).

In publishing the final version of its regulations implementing the patent examination procedures under the AIA, the USPTO stated:

> "… [T]he applicant will have prepared both the transition application and its priority or benefit application(s) and thus should be far more familiar with the contents thereof than an examiner who was not involved in the preparation of any of the applications. Patent applicants would need to pay higher filing fees to recover the significantly higher examination costs <u>if Office personnel were required to independently determine the effective filing date of each claim ever presented in an application. As a result of the statement requirement, the Office and the public will have greater certainty as to whether any resulting patent is an AIA or pre-AIA patent</u>."

78 Fed. Reg. 11,040-41 (February 14, 2013) (discussing final rule codified at 37 C.F.R. §1.78).  (Emphasis added).

Thus, the USPTO has made clear that, in the examination of transition applications, the USPTO relies upon the applicant's statement under 37 C.F.R. §1.78, or the absence thereof and, in the absence of such a statement from an applicant, the USPTO will examine the transition application under pre-AIA law. Accordingly, the USPTO will not independently determine a transition application's entitlement to the benefit of the filing date of its claimed priority application.

**C.    The Patent Applicant's Duty of Disclosure to the USPTO in Relation to Transition Applications.**

USPTO regulations place a duty of candor and good upon patent applicants in the filing prosecution of patent applications.  "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section."   37 C.F.R. §1.56(a).  "… [N]o patent will be granted on an application in connection with which fraud on the Office was practiced or

attempted or the duty of disclosure was violated through bad faith or intentional misconduct." *Id*.

In publishing the final version of its regulations implementing the patent examination procedures under the AIA, the USPTO stated:

> "Sec. 1.56 also includes a general duty of candor and good faith in dealing with the Office, which <u>could be implicated if an applicant is aware that a transition application contains a claim to a claimed invention that has an effective filing date on or after March 16, 2013, but nonetheless chooses not to provide the statement when required under Sec. … 1.78</u>."

78 Fed. Reg. 11,041 (February 14, 2013) (discussing final rule codified at 37 C.F.R. §1.78). (Emphasis added). Accordingly, the failure to submit a required statement under 37 C.F.R. §1.78, where a patent applicant or its representative was aware that a transition application included a claim to new subject matter, <u>standing alone, can give rise to a breach of the duty of disclosure</u> to the USPTO and, in turn, render any patent issuing as a result of such conduct unenforceable due to inequitable conduct before the USPTO.

## D. The Pleading Standards for Inequitable Conduct.

A motion to dismiss a counterclaim brought pursuant to Fed. R. Civ. P. 12(b)(6) is evaluated under the same standard to dismiss a plaintiff's complaint. In reviewing these motions, courts view all of the pleaded facts as true and in the light most to the non-moving party. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). For allegations of fraud, "a party must state with particularity the circumstances constituting [the] fraud", although [m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

The Federal Circuit set forth the test for pleading an inequitable conduct claim in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). The heightened pleading requirements do not require—as Seville implicit suggests in its motion—an accused infringer to definitively prove the merits of its inequitable conduct claim at the initial pleading stage. Rather, to satisfy the heightened pleading standard of Rule 9(b), "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1328. Next, "although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1328. A counterclaim must allege "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id*. at 1327. The facts pled in support of Count II easily meet this threshold requirement.

## Argument

### A. Neatfreak has Adequately Pled its Counterclaim for Inequitable Conduct

Count II of Neatfreak's Counterclaims, for a declaratory judgment of unenforceability of the '357 Patent, meets all of the requirements for stating a claim for inequitable conduct under the Federal Circuit's pleading standards a set forth in *Exergen*. As demonstrated, *infra*, Neatfreak's Counterclaim plausibly alleges facts identifying the requisite "who, what, when, where, and how" of the material misrepresentation or omission committed before the USPTO in

connection with the application resulting on the '357 Patent.   Neatfreak's Counterclaims likewise plausibly alleges facts from which the requisite scienter may be inferred.

      **1.**       **The Key Difference between the '357 Patent and its Priority Application.**

As alleged in Neatfreak's Counterclaims, on May 26, 2010, Seville's patent attorney filed U.S. Utility Application No. 12/800,986, entitled "Storage Rack" (the "**'986 Application**"), with the USPTO.  This patent application was published by the USPTO on December 1, 2011 as Pub. No. 2011/0290750 A1 (the "**'750 Publication**").  Counterclaims, ECF No. 44 at ¶ 14.  On May July 24, 2013, the same patent attorney for Seville filed the application resulting in the '357 Patent, claiming priority to the '986 Application.  *Id*. at ¶ 32.   The application for the '357 Patent is a transition application, because it was filed after March 16, 2013, and claims priority to a parent application filed before March 16, 2013.  *Id*. at ¶ 38.

The '357 Patent claims three different embodiments of ornamental designs for storage racks: a first embodiment, in the form of the ornamental design of a 3-shelf, single-tier rack; a second embodiment, in the form of an ornamental design of a 9-shelf, single tier rack; and a third embodiment, in the form of an ornamental design of a 9-shelf, three-tier rack.  *Id*. at ¶ 45.   The first claimed embodiment of the '357 Patent, in the form of the ornamental design of a 3-shelf, single-tier rack, is derived from Figure 1 of the '986 Application, as shown below.  *Id*. at ¶ 46.



**Fig. 1 of the '986 Application                    Fig. 1 of the
and '750 Publication                               Issued '357 Patent**

The second claimed embodiment of the '357 Patent, in the form of an ornamental design of a 9-shelf, single tier rack, is derived from Figure 12 of the '986 Application, as shown below. *Id*. at ¶ 47.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Fig. 12 of the '986 Application            Fig. 2 of the
and the '750 Publication                     Issued '357 Patent**

The third claimed embodiment of the '357 Patent, in the form of an ornamental design of a 9-shelf, three-tier rack, has no support in the '986 Application, and is thus newly claimed subject matter. *Id*. at ¶ 49. Specifically, as pled, a 3-tier, 6-shelf rack resign from the '986 Application was <u>deleted and, without notification to the USPTO, was replaced by 3-tier, 9-shelf rack design, newly created and added to the application for the '357 Patent</u>, as shown below. *Id*.

 

**Deleted 3-Tier, 6-Shelf Rack from the Parent '986 Application**

**3-Tier, 9-Shelf Rack, Newly Created and Added as Fig. 3 to the Application for the '357 Patent**

> **2.   Neatfreak's Counterclaims Adequately Plead the "Who" and "When" of the Material Misrepresentations and Omissions before the USPTO.**

Neatfreak's Counterclaims adequately plead the "who" and "when" requirements of *Exergen* to state a claim for inequitable conduct.  Neatfreak's Counterclaims allege that the same patent attorney for Seville: (1) submitted the application for the '357 Patent on July 24, 2013 (*Id.* at ¶ 32); (2) submitted the application for the '986 Application to which the '357 Patent claims priority on May 26, 2010 (*Id.* at ¶ 14); (3) intentionally failed to submit the required statement, pursuant to 37 C.F.R. § 1.78, that the application for the '347 Patent claimed new matter not supported by its parent application, with the USPTO acknowledging in the Official Filing Receipt issued August 1, 2013 that no such statement was submitted (*Id.* at ¶ 42); and (4) repeatedly misrepresented to the

USPTO that the '357 Patent was a continuation[3], rather than a continuation-in-part application[4], in two separate writings on July 24, 2013, and again on June 6, 2014 (*Id*. at ¶¶ 39-40).  Seville does not assert in its Motion to Dismiss that Neatfreak has failed to adequately plead the "who" or "when" of a claim for inequitable conduct.

### 3. Neatfreak's Counterclaims Adequately Plead the "What" and "Where" of the Material Misrepresentations and Omissions before the USPTO.

Neatfreak's Counterclaims likewise adequately plead the "what" and "where" requirements of *Exergen* to state a claim for inequitable conduct.  To properly plead the "what and "where" of alleged material misrepresentations and omissions, a pleading must "identify which claims, and which limitations of those claims, the withheld references are relevant to, and where in those references the material information is found."  *See Exergen*, 575 F.3d at 1329.  Design patents such as the '357 Patent are only permitted to have a single claim, directed to the article as shown in the drawings.  37 C.F.R. § 1.153(a).  Thus, identifying a design patent and its claimed design fully identifies the both relevant claims and its claim limitations.

---

[3] "A continuation application is an application for the invention(s) disclosed in a prior- filed copending nonprovisional application, international application designating the United States, or international design application designating the United States. The disclosure presented in the continuation <u>must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application</u>."  Manual of Patent Examination and M.P.E.P. § 201.07 (Emphasis added).

[4] "A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application <u>and adding matter not disclosed in the said earlier nonprovisional application</u>."  *Id*. at 201.08. (Emphasis added).

Neatfreak's Counterclaims allege that the application for the '357 Patent contained and claimed new subject matter that was not disclosed in the parent '986 Application to which it claims priority, published as the '750 Publication. Counterclaims, ECF No. 44 at ¶ 44.  Neatfreak's Counterclaims identify the new subject matter as the 3-tier, 9-shelf rack, having been newly created and added as Figure 3 to the application for the '357 Patent.  *Id*. at ¶ 48.   Neatfreak's Counterclaims further allege that, as the result of Seville's patent attorney's failure to submit the required statement under 37 CFR § 1.78, and his repeated misrepresentation of the application for the '357 Patent as being a continuation, rather than a continuation-in-part of the '986 Application, the application for the '357 Patent was improperly examined under pre-AIA, rather than AIA law, and, resultantly, both the '986 Application and the '750 Publication were not properly considered as being prior art to the application for the '357 Patent.  *Id*. at ¶¶ 39-44.  Accordingly, Neatfreak's Counterclaims adequately plead both the "what" and "where" requirements of *Exergen*.

At bottom, Seville's Motion to Dismiss does not take issue as to whether Neatfreak has adequately pled <u>any</u> of the who, what, when or where requirements of *Exergen* to state a claim for inequitable conduct in connection with the '357 Patent.  Rather, Seville's Motion to Dismiss only addresses whether the acts and omissions of Seville's patent attorney were in fact misrepresentations, and whether those misrepresentations were material – the "how" requirement of *Exergen*; as well as whether Seville's patent attorney acted with the requisite state of mind – the scienter requirement of *Exergen*.  Both of these contentions of Seville's Motion to Dismiss are addressed, *infra*.

**4.     Neatfreak's Counterclaims Adequately Plead the "How" of the Material Misrepresentations and Omissions before the USPTO.**

Neatfreak's Counterclaims likewise adequately plead the "how" requirement of *Exergen* to state a claim for inequitable conduct.  To properly plead the "how" requirement, Neatfreak's Counterclaims must identify why the acts and omissions of Seville's patent attorney were material, and how an examiner would have used this material in assessing the patentability of the claims.  *See Exergen*, 575 F.3d at 1329-30.

Neatfreak's Counterclaims allege that, but-for the omission of Seville's patent attorney in submitting a statement under Rule 1.78, and but-for the repeated misrepresentations of Seville's patent attorney that the application for the '357 Patent was a continuation, rather than a continuation in part application, the examiner would have considered both the priority '986 Application and its publication as the '750 Publication to be prior art to the application for the '357 Patent.  Counterclaims, ECF No. 44 at §§ 41, 43.  "A claim for priority is inherently material to patentability because a priority date may determine validity, whether an issue arises in prosecution or later in court challenges to validity."  *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1233 (Fed. Cir. 2007).  "[A]n active misrepresentation [concerning a claim for priority] made during prosecution in order to avoid prior art is no doubt "highly material".  *Id*.  (Internal quotations omitted).

Neatfreak's Counterclaims further identify precisely why the '986 Application and the '750 Publication are so material.  Specifically, Neatfreak's Counterclaims both allege and illustrate that Figures 1 and 12 of the '986 Application and the '750 Publication are substantially the same in appearance to Figures 1 and 2 of the claimed design of the '357 Patent with, at most, a *de*

*minimis* difference, in the form of the '357 Patent's addition of surface shading, as is required in design patent drawings per USPTO rules of practice. *Id.* at §§ 46, 47, 49.

As a result of this near identity of the disclosures of the prior art '986 Application and the '750 Publication to two of the claimed embodiments of the '357 Patent, had the examiner properly applied them as prior art, the application for the '357 Patent would have been finally rejected, rather than granted, as being anticipated by, or unpatentable over, these prior art references. *Id.* at §§ 54-55.

Neatfreak's Counterclaims further explain why the '986 Application the '750 Publication are not cumulative to the prior art made of record and considered during the examination of the application for the '357 Patent. *Id.* at § 53. Accordingly, Neatfreak's Counterclaims include allegations meeting the "how" requirement of *Exergen*.

### 5. Seville's Arguments Concerning the "How" Requirement of *Exergen* are all Unavailing.

Seville makes three principal arguments in asserting that Neatfreak's Counterclaim fails to meet the "how" requirement of *Exergen*: (1) that Neatfreak's Counterclaims only "speculate" that the Examiner did not consider the '750 Publication because of Seville's patent attorney's omissions and misrepresentations, and that the examiner would have rejected the application for the '357 Patent if he appreciated that the '750 Publication was prior art; (2) that Seville's patent attorney properly designated the application for the '357 Patent as a continuation, rather than a continuation-in-part application; and (3) even if Seville's patent attorney did misdesignate the application for the '357 Patent as being a continuation application, the misdesignation was immaterial. Each of these arguments is entirely unavailing.

First, Seville argues that Neatfreak's Counterclaims only speculate that the examiner did not consider the '750 Publication because of its misidentification as a continuation application (Motion to Dismiss, ECF No. 53 at p. 3), and that it is speculation that the examiner would have rejected the application for the '357 Patent if the '750 Publication (*Id.* at pp. 8-11).   Seville's first assertion of purported speculation, as to why the Examiner did not consider the '750 Publication, conveniently ignores the allegations of Neatfreak's Counterclaims regarding the failure of Seville's patent attorney to make the required statement for a transition application under 37 C.F.R. § 1.78, and that absent such a statement from an applicant, <u>USPTO policy dictates that it will examine the application under pre-AIA law</u>, as USPTO relies upon the applicant's statement, or lack thereof, as to whether an application's claims are supported by the parent application to which priority is claimed.  *See* Counterclaims, ECF No. 44 at §§ 37, 42.  Indeed, Seville's Motion to Dismiss makes no mention whatsoever of the Counterclaims' allegations that the application for the '346 Patent was a transition application, that Seville's patent attorney's failure to submit any statement under  37 C.F.R. § 1.78, and that USPTO's express relies upon the absence of such a statement.

Seville's other assertion, that it is only "speculation" that the examiner would have rejected the application for the '357 Patent if he appreciated that the '750 Publication was available as prior art, is demonstrably false.  As Neatfreak's Counterclaim makes clear, Figures 1 and 12 of the '986 Application and the '750 Publication are substantially the same in appearance to Figures 1 and 2 of the claimed design of the '357 Patent with, at most, a *de minimis* difference, in the form of the '357 Patent's addition of surface shading, as is required in design patent drawings per USPTO rules of practice.  Counterclaims, ECF No. 44 at §§

46, 47, 49.    Thus, the '750 Publication fully discloses two claimed embodiments of the '356 Patent.  It necessarily follows that, had the application resulting in the '357 Patent been properly examined under the AIA, the application would have been finally rejected as being either anticipated by (under 35 U.S.C. § 102(a)) or otherwise unpatentable over (under 35 U.S.C. § 103) the '750 Publication.  *Id*. at § 54.

Next, Seville argues that its patent attorney properly represented to the USPTO that the application for the '357 Patent was a continuation, rather than a continuation-in-part application, because no new subject matter was purportedly added to the application for the '357 Patent.  Motion to Dismiss, ECF No. 53 at pp. 8-12.  Seville asserts that Fig. 3 of the '357 Patent is "nothing more than three copies of the storage rack of Figure 1, placed side by side".  *Id*. at p. 10.

"To be entitled to a parent's effective filing date, a continuation [application] must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1 … The test for sufficiency of the written description, which is the same for either a design or a utility patent, has been expressed as whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.  In the context of design patents, the drawings provide the written description of the invention. Thus, when an issue of priority arises under § 120 in the context of design patent prosecution, <u>one looks to the drawings of the earlier application</u> for disclosure of the subject matter claimed in the later application."  *In re Owens,* 710 F.3d 1362, 1366 (Fed. Cir. 2013) (Internal quotation marks and citations omitted) (Emphasis added).

Neatfreak's Counterclaims demonstrate that, in submitting the application for the '357 Patent, Seville's patent attorney deleted a 3-tier, 6-shelf rack from

the disclosure of the parent application, and substituted instead the newly created 3-tier, 9-shelf storage rack of Figure 3.   Counterclaims, ECF No. 44 at ¶ 48. Seville's attempt to portray Figure 3 as being merely three instances of the storage rack of Fig. 1 of the '357 Patent is plainly wrong.

First, Seville has mistakenly looked to other drawings of the '357 Patent itself, rather than to the drawing of the priority patent application, for support for the 9-tier rack of Figure 3.   *See In re Owens.* In essence, Seville argues that Figure 3 of the '357 Patent is merely another configuration of the design shown in its parent application.   However, "[a] <u>change in the configuration of the claimed design</u> is considered a departure from the original disclosure and introduces prohibited new matter."  M.P.E.P. § 1505.04.  (Emphasis added).

Second, the description of the drawings of the '357 Patent expressly identifies its Figure 3 as being a <u>different, "third embodiment" of the invention</u>. Counterclaims, ECF No. 44 at ¶ 45.  Surely, merely placing multiple instances of an embodiment of an invention side by side does not create a "new embodiment" of an invention, as the '357 Patent explicitly labels its Figure 3.

Third, a visual comparison of Figures 1 and 3 of the '357 Patent demonstrates that Figure 3 is not, in fact, three instances of Figure 1, but is rather a different, 9-tier rack that is nowhere to be found in the priority application.  The differences between the embodiments of Figures 1 and 3 of the '357 Patent are illustrated below:



**3 BRACKETS ABSENT**

**3 BRACKETS ABSENT**

**3 BRACKETS PRESENT**

FIG.3

As demonstrated above, the center and right-most sections of the 3-tier storage rack of Figure 3 both differ in construction from the left-most section. Figure 3 of the '357 Patent in fact presents a new, interconnected, 9-tier, <u>unitary</u> storage rack that is nowhere to be found in the disclosure of its parent application.

Critically, further undercutting Seville's position, the question of whether new matter has been improperly added to a patent's specification <u>is a question of fact</u>. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991)*; Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1574-75 (Fed. Cir. 1992). Seville's proffering of a different interpretation of the patent's

drawings than that asserted by Neatfreak in Count II does nothing to eliminate this question of fact and does not support the dismissal of Neatfreak's counterclaim.

Finally, Seville argues that any misdesignation of its patent application as being a continuation, rather than a continuation-in-part application is immaterial, as the Examiner could have made his own decision in that regard.  Seville cites three decisions for the broad proposition that "statements by a patent applicant or his attorney characterizing or describing information that is already before the PTO do not constitute inequitable conduct.  Motion to Dismiss, ECF No. 53 at p. 11.  In so doing, Seville cites inapplicable case law, and once again ignores the USPTO's statements concerning transition applications, particularly the USPTO's stated reliance upon the applicant's representations regarding whether a transition application contains new matter.

Seville relies upon *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348-49 (Fed. Cir. 2007); and *Akzo N.V. v. U.S. International Trade Com.*, 808 F.2d 1471, 1482 (Fed. Cir. 1986). Motion to Dismiss, ECF No. 53 at p. 11.  Each of these cases is wholly inapplicable to the acts and omissions at hand.  Notably, all of the cases cited by Seville are directed to assertions that mere <u>attorney argument</u>, advocating a particular interpretation of prior art submitted to the USPTO, constitute inequitable conduct.   The conduct alleged in Neatfreak's Counterclaims does not involve any attorney argument advocating interpretations of prior art references.

Moreover, none of these cases cited by Seville involve transition applications, or the failure to make a required statement under 37 C.F.R. § 1.78.  Once again, Seville completely ignores the USPTO's stated policy behind this

required statement of the applicant – namely, that, in transition applications, patent examiners cannot be expected to independently determine the effective date of each claimed invention.  If examiners were required to independently determine the effective filing date of each claim ever presented in an application, applicants would need to pay higher filing fees to recover the significantly higher examination costs.  See 77 Fed. Reg. 43,745; 78 Fed. Reg. 11,040-41, both discussed, *supra*.  Seville's representation on page 12 of its Motion to Dismiss that "[t]he Examiner plainly had the capacity to review Figure 3 of the D357 Patent and determine whether it introduced any new matter" is clearly contrary to USPTO practice and procedure for transition patent applications.

### 6.    Neatfreak's Counterclaims Adequately Plead the Scienter Requirement for a Claim for Inequitable Conduct.

Neatfreak's Counterclaims meet the scienter requirement to state a claim for inequitable conduct relative to the '357 Patent, by including sufficient allegations from which the Court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the USPTO.  *See Exergen*, 575 F.3d at 1328.  Sufficient facts are alleged from which the Court may reasonably infer that a party acted with the requisite state of mind."  *See Id*. at 1327.

Regarding knowledge of the withheld information and its materiality, Neatfreak's Counterclaims plausibly allege that the same patent attorney for Seville prepared and submitted both the priority '986 Application and the application for the '357 Patent.  Counterclaims, ECF NO. 44 at ¶¶ 14, 32, 55.  Neatfreak's Counterclaims further allege that the same patent attorney deleted a figure from the priority '986 Application, and substituted in a figure that was

newly created for the '357 Patent. *Id*. at ¶ 48. Neatfreak's Counterclaims thus allege facts from which the Court may reasonably infer that Seville's patent attorney knew that the application for the '357 Patent contained new subject matter that is not supported in its parent application.

Regarding the specific intent to deceive the USPTO, Neatfreak's counterclaims plausibly allege that Seville's patent attorney not only personally made the changes to the claimed subject matter of the '357 Patent application (*Id*.), but also that the same patent attorney for Seville: (1) failed to submit the requisite statement under 37 C.F.R. 1.78, thus <u>ensuring that the application for the '357 Patent would be examined under pre-AIA, rather than AIA law</u> (*Id*. at ¶ 42); and (2) engaged in a <u>repeated pattern</u> of misrepresentation to the USPTO, by misidentifying the application as being a continuation, rather than a continuation-in-part application on multiple occasions, including in the specification of the application for the '357 Application as originally filed (*Id*. at ¶ 39), in the associated Application Data Sheet (*Id*.), and in a subsequent amendment to the application (*Id*. at ¶ 40).

Particularly at the initial pleading stage, where courts view all of the pleaded facts as true and in the light most to the non-moving party, any one of these allegations are sufficient to support a reasonable inference that Seville's attorney acted with the requisite state of mind. Taken together, there can be no doubt that the scienter requirement of *Exergen* has been met by the allegations of Seville's Counterclaims.

In addressing the scienter pleading requirement, Seville argues that the facts alleged in Seville's counterclaims "point at least equally to the conclusion of good faith", and that "none of the factual allegations in the counterclaim suggest that bad faith is the single most reasonable inference". Motion to

Dismiss, ECF No. 53 at p. 12.  In so doing, Seville has improperly conflated the holding in *Therasense, Inc. v. Becton, Dickenson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc) for what must ultimately be <u>proven at trial</u>, with the holding in *Exergen*, for what must be <u>alleged at the pleading stage</u>.  Here, the issue presently before the Court is not whether Neatfreak will ultimately prevail on the merits of its Counterclaims, but rather whether Neatfreak has pled facts sufficient to entitle it to later offer evidence in support of its allegation of inequitable conduct. Neatfreak has clearly alleged sufficient facts to nudge its claim for inequitable conduct "across the line from conceivable to plausible".  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

  *Therasense* did not, as Seville implicitly suggests, heighten the pleading standards set forth in *Exergen*.  The Federal Circuit has reiterated that, even after *Therasense*, all that is required at the pleading stage is a plausible inference of deceptive intent:

> "A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may <u>reasonably infer</u> that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO."

*Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing *Exergen*, 575 F.3d at 1318, 1330).  (Emphasis added).  In arguing to the contrary in its Motion to Dismiss, Seville has improperly collapsed the distinction between pleading determinations and determinations on the merits.

  Accordingly, Neatfreak's Counterclaims properly plead all of the elements for its claim seeking a declaratory judgment that the '357 Patent is unenforceable.

**B.     Count II of Neatfreak's Counterclaim Should not be Dismissed With Prejudice.**

Finally, in its proposed order accompanying its Motion to Dismiss, Seville, for the first time, asserts that Count II of Neatfreak's Counterclaims should be dismissed <u>with prejudice</u>, and that Neatfreak's associated affirmative defense should be stricken <u>without leave to amend</u>. Proposed Order, ECF No. 52-1. As demonstrated above, Neatfreak's Counterclaims meet all of the requirements to state a claim for inequitable conduct relative to the '357 Patent. If, for some reason, the Court remains unpersuaded, Neatfreak submits that any dismissal of its Count II should be without prejudice, and Neatfreak's future ability to amend the associated affirmative defense should not be foreclosed at this juncture, as discovery in this action may well yield additional facts supporting this counterclaim and its associated affirmative defense.

## <u>Conclusion</u>

For all of the foregoing reasons, Seville's Motion to Dismiss Count II of Neatfreak's Counterclaims, and to strike the associated affirmative defense, should be denied.

Respectfully submitted,

Dated:  March 7, 2016                PATZIK, FRANK & SAMOTNY LTD.


                                    By: /s/ *Jordan Herzog*
                                    Jordan Herzog (IL Bar No. 6216236)
                                     jherzog@pfs-law.com
                                    Jonathan S. Goodman  (IL Bar No. 6256015)
                                     jgoodman@pfs-law.com
                                    PATZIK, FRANK & SAMOTNY LTD.
                                    150 S. Wacker Drive, Suite 1500
                                    Chicago, Illinois 60606
                                    Telephone: (312) 551-8300
                                    Facsimile: (312) 551-1101

                                    Russell M. Selmont (CA Bar No. 252522)
                                     rselmont@ecjlaw.com
                                    ERVIN COHEN & JESSUP LLP
                                    9401 Wilshire Boulevard, Ninth Floor
                                    Beverly Hills, California 90212-2974
                                    Telephone: (310) 273-6333
                                    Facsimile: (310) 859-2325

                                    Attorneys for Defendants
                                    NEATFREAK GROUP CORP.,
                                    NEATFREAK GROUP, INC. and TARGET
                                    CORP.

## CERTIFICATE OF SERVICE

The undersigned counsel for Defendants Neatfreak Group Corp., Neatfreak Group, Inc. and Target Corporation hereby certifies that a true and correct copy of the foregoing document was filed electronically by means of the Court's ECF system on March 7, 2016.  Pursuant to Local Rule 5-3.2.1, delivery of the notice of electronic filing that is automatically generated by ECF constitutes service pursuant to the Federal Rules of Civil Procedure on counsel of record for Plaintiff, who is a registered user of ECF.

/s/ *Jordan Herzog*
Jordan Herzog