UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | | |
|---|---|---|
| **CASE NO.:** | CV 15-06237 SJO (ASx) | **DATE:** April 1, 2016 |
| **TITLE:** | Seville Classics, Inc. v. Neatfreak Group, Inc., et al. | |

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                           Not Present
Courtroom Clerk                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**          **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF SEVILLE CLASSICS, INC.'S MOTION TO STRIKE DEFENSE AND TO DISMISS COUNTERCLAIM** [Docket No. 52]; **GRANTING MOTION TO SEVER AND STAY CLAIMS AGAINST TARGET CORP. AND DOES 1-10** [Docket No. 55]

These matters are before the Court on the following two motions: (1) Plaintiff Seville Classics, Inc.'s ("Seville" or "Plaintiff") Motion to Strike Defendant's Inequitable Conduct Defense and Dismiss First Amended Counterclaim ("Motion to Strike"), filed February 24, 2016; and (2) Defendants Netfreak Group Corp. ("NGC"), Netfreak Group, Inc. ("NGI"), and Target Corporation's ("Target") (together, "Defendants") Motion to Sever and Stay Claims Against Target Corporation and Does 1-10 ("Motion to Sever"), filed March 4, 2016. NGI and NGC (together, "Neatfreak") opposed the Motion to Strike ("Strike Opposition") on March 7, 2016, and Seville replied ("Strike Reply") on March 14, 2016. Seville opposed the Motion to Sever ("Sever Opposition") on March 14, 2016, and Defendants replied ("Sever Reply") on March 21, 2016. The Court found these matters suitable for disposition without oral argument and vacated the hearings set for April 4, 2016.[1] *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **DENIES** the Motion to Strike and **GRANTS** the Motion to Sever.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Seville alleges the following in its First Amended Complaint ("FAC"), filed October 8, 2015. Seville is a California corporation that designs and manufactures home organization and storage products. (*See* FAC ¶¶ 3, 9, 10.) Seville is the owner, by assignment, of the following three patents, which it is asserting against Defendants in this action: (1) U.S. Patent No. 9,144,332 (the "'332 Patent"), titled "Storage Rack," and issued to inventor Gary Lim on January 29, 2014; (2)

---

[1] The Court continued the hearing date on the Motion to Strike from March 28 to April 4, pursuant to the parties' stipulation. (*See* Joint Stip. To Continue Hr'g, ECF No. 54; Order Continuing Hr'g on Mot. to Strike, ECF No. 57.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 15-06237 SJO (ASx)          DATE:  April 1, 2016

U.S. Patent No. D626,356 (the "'356 Patent"), titled "Modular Utility Rack," and issued to inventor Edwin Ho on November 2, 2010; and (3) U.S. Patent No. D724,357 (the "'357 Patent"), titled "Storage Rack," and issued to inventor Gary Lim on January 29, 2014 (together, the "Asserted Patents").  (FAC ¶¶ 12-14.)

NGI is a corporation based in Ontario, Canada, and NGC is a corporation based in Delaware. (FAC ¶¶ 6-7.)  Neatfreak designs, manufactures, and distributes home organization products, and in so doing directly competes with Seville's business.  (FAC ¶¶ 9-10.)  Target, a Minnesota corporation, is a retailer that sells Neatfreak's products.  (FAC ¶¶ 10, 16.)  Between August 9 and August 15, 2015, Target offered to sell and sold "stackable shelf products" manufactured and/or imported by Neatfreak.  (FAC ¶¶ 16-17.)

On August 17, 2015, Plaintiff filed its initial Complaint in this Court, and filed its First Amended Complaint ("FAC") on October 8, 2015.[2]  (*See* Compl., ECF No. 1; FAC.)  On December 28, 2015, Neatfreak filed an Answer that includes several affirmative defenses and counterclaims. (Netfreak Answer, ECF No. 27.)  On February 10, 2016, NGC and NGI filed their Joint First Amended Counterclaims ("Counterclaims") against Seville, asserting three counterclaims for declaratory judgment of unenforceability of each of the Asserted Patents due to inequitable conduct, as well as a single counterclaim for declaratory judgment of noninfringement of the Asserted Patents. (*See* First Am. Countercl., ECF No. 44.)  Netfreak amended its affirmative defenses on February 15, 2016 to assert ten affirmative defenses, of which the ninth ("Ninth Affirmative Defense") alleges that the '357 Patent is unenforceable due to inequitable conduct, as set forth more fully in paragraphs 14 and 32 through 59 of the Counterclaims.  (Netfreak's First Am. Defenses, ECF No. 51.)

II.     LEGAL STANDARDS

    A.     Motion to Dismiss

Federal Rule of Civil Procedure 12 ("Rule 12"),[3] which provides for dismissal of a plaintiff's cause of action for "failure to state a claim on which relief can be granted," *see* Fed. R. Civ. P. 12(b)(6), must be read in conjunction with Rules 8(a) and 9(b), which impose pleading standards.  *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Rule 8(a) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the

---

[2]   Plaintiff previously filed suit in this district against Defendants asserting patent infringement in *Seville Classics, Inc. v. Target Corp. Et al.*, Case No. 2:13-CV-08896-JVS-AGRx (C.D. Cal.), which was voluntarily dismissed after the parties entered a confidential settlement agreement.  (FAC ¶ 2.)

[3]   Citations to the Federal Rules of Civil Procedure are hereinafter cited as "Rule [X]," where [X] is the number of the referenced rule.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-06237 SJO (ASx)</u>   DATE: <u>April 1, 2016</u>

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the pleader is not required to plead "detailed factual allegations" under Rule 8, this standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Pleadings that contain nothing more than legal conclusions or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (citation and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a complaint pleads sufficient facts "to raise a right to relief above the speculative level," a court may not dismiss the complaint under Rule 12(b)(6). *See Twombly*, 550 U.S. at 545.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court only considers the complaint, documents incorporated by reference in the complaint, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may deny leave to amend where amendment would be futile or if the claim is legally insufficient. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

   B.   <u>Motion to Strike</u>

"The court may strike from a pleading an insufficient defense . . . ." Fed. R. Civ. P. 12. "[M]otions to strike are typically viewed with disfavor because they are often used for purposes of delay, and because of the strong judicial policy favoring resolution on the merits." *United States ex re. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1038 (C.D. Cal. 2012). "To strike an affirmative defense, the moving party must convince the court 'that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *S.E.C. v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995), *aff'd sub nom. S.E.C. V. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998) (citations omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court. *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 Supp. 2d 1028, 1033 (C.D. Cal. 2002). In reviewing a motion to strike, the court must view the pleadings under attack in the light most favorable to the pleader." *Masimo*, 929 F. Supp. 2d at 1038.

   C.   <u>Inequitable Conduct</u>

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). Having been described as "the 'atomic bomb' of patent law," inequitable conduct is a "common litigation tactic" that is "routinely brought on 'the slenderest grounds.'" *Id.* at 1288-89 (quoting *Aventis Pharma S.A. v. Amphastar Pharm., Inc.*, 525 F.3d 1334, 1349 (Fed. Cir. 2008) (Rader, J., dissenting); *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988)). "To prevail on the defense of inequitable conduct, the accused infringer must prove that

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 15-06237 SJO (ASx)          DATE: April 1, 2016

the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290.

To survive a motion to dismiss, the allegations in support of the defense must satisfy the heightened pleading standards imposed by Rule 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). As a result, "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual basis for the allegation" does not pass muster. *See id.* at 1326-27. Thus, the accused infringer must identify the "specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. Moreover, because "[t]he relevant 'conditions of mind' for inequitable conduct include . . . (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO . . . the pleadings [must] allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.*

    D.    <u>Joinder, Severance, and Staying Action</u>

Although Rule 20 typically governs joinder in federal court, 35 U.S.C. section 299 ("Section 299"), enacted as part of the AIA, details when joinder of accused patent infringers is proper. Section 299(a) provides that

> parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if . . . (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the **same transaction, occurrence, or series of transactions or occurrences** relating to the making, using, importing into the United States, offering for sale, or selling of the **same accused product or process**; and (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a). Additionally, Section 299(b) provides that "accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit." 35 U.S.C. § 299(b). "The AIA's joinder provision is more stringent than Rule 20, and adds a requirement that the transaction or occurrence must relate to making, using, or selling of the same accused product or process." *In re Nintendo Co., Ltd.*, 544 Fed. App'x 934, 939 (Fed. Cir. 2013). If the Court concludes that joinder is not proper, a court may "add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. "Further, even if joinder requirements are met, the Court may sever to avoid delay, jury confusion, or prejudice to the moving party." *Sillage LLC v. Kenrose Perfumes Inc.*, No. 8:14-cv-02043-CAS(RNBx), 2015 WL 3649605, at *3 (C.D. Cal. June

CASE NO.: **CV 15-06237 SJO (ASx)**      DATE: **April 1, 2016**

9, 2015) (citing Fed. R. Civ. P. 20(b); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000); *In re Nintendo*, 544 Fed. App'x at 939).

III. DISCUSSION

    A. Motion to Strike

In the Motion to Strike, Seville asks the Court to strike Netfreaks' Ninth Affirmative Defense and dismiss the corresponding counterclaim, Count II, both of which relate to the '357 Patent. (*See* Mot. to Strike, ECF No. 53.) In its Ninth Affirmative Defense and in its Counterclaims, Netfreak broadly asserts inequitable conduct on three grounds: (1) misrepresenting the application leading to the '357 Patent as a continuation rather than a continuation-in-part to the patent examiner; (2) failing to disclose to the examiner that the published version of earlier-filed U.S. Application No. 12/800,986 (the "'986 Application")—namely, the '750 Publication—constitutes prior art;[4] and (3) failing to submit a statement pursuant to 37 C.F.R. Section 1.78 ("1.78 Statement") that would have given notice to the examiner that this application was a "transition" application that included new subject matter. (*See* Countercl. ¶¶ 37, 42.) The application leading to the '357 Patent, U.S. Patent Application No. 29/461,511 (the "'511 Application"), was filed on July 24, 2013 and claims priority to the '986 Application. (Countercl. ¶ 32.)

Seville argues Neatfreak's Ninth Affirmative Defense and Count II of its Counterclaims should be stricken and dismissed, respectively, because Neatfreak did not properly plead materiality or intent to deceive the examiner. (*See generally* Mot. to Strike.) The Court disagrees.

Because the issue of inequitable conduct "pertains to or is unique to patent law," whether it is adequately plead is governed by the United States Court of Appeals for the Federal Circuit. *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed. Cir. 2003.) (citing *Central Admixture Pharmacy Servs., Inc v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)). "To prevail on [ ] inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO. The accused infringer must prove both elements–intent and materiality–by clear and convincing evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). "[T]he specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Id.* at 1290 (citation

---

[4] Netfreak alleges that the '986 Application was filed by Raymond C. Sun ("Mr. Sun"), in his capacity as patent attorney for Seville's employee and named inventor, Gary M. Lim ("Mr. Lim"), on May 26, 2010, and that the '750 Publication was published on December 1, 2011. (Countercl. ¶¶ 11, 14.)

CASE NO.: <u>CV 15-06237 SJO (ASx)</u>  DATE: <u>April 1, 2016</u>

and quotations omitted). The standard for the materiality prong is "but-for materiality." *Id.* at 1290.

While inequitable conduct is a broader concept that fraud, it must nevertheless be plead in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. *See Ferguson,* 350 F.3d at 1344 (Fed. Cir. 2003). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus,

> to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include **sufficient allegations of underlying facts** from which a court may reasonably infer that a specific individual (1) **knew** of the withheld material information or of the falsity of the material misrepresentation, and (2) **withheld or misrepresented** this information with a specific intent to deceive the PTO.

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009) (emphasis added).

        1.       <u>Intent to Deceive</u>

Seville alleges that Neatfreak's inequitable conduct claim is inadequate because Netfreak fails to properly "plead facts showing that an intent to deceive is the single most reasonable inference." (Mem. 12.) Seville is mistaken. The "single most reasonable inference" standard governs what needs to be shown to **prevail** on an inequitable conduct claim, not what is needed to survive a Rule 12 motion. *See Therasense*, 649 F.3d at 1290 ("[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'") (citation omitted). The correct pleading standard, which demands that the claimant plead "sufficient allegations of underlying facts from which a court **may reasonably infer**. . . with specific intent to deceive the PTO," has been met here. *Exergen*, 575 F.3d at 1329-29 (emphasis added). Neatfreak alleges the '357 Patent would have been invalid had it been properly identified as a continuation-in-part, rather than as a continuation, under AIA law. (Countercl. ¶¶ 41-44, 54.) Further, Neatfreak contends Seville and its prosecution attorney (1) engaged in a pattern of behavior consisting of replacing a figure in the '511 Application; (2) misrepresented on several occasions the '357 Patent as a continuation; (3) failed to disclose the '750 Publication as prior art; and (4) failed make a 1.78 Statement. (Countercl. ¶¶ 39-44, 50.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 15-06237 SJO (ASx)                DATE: April 1, 2016

While Seville may have had a "good faith" belief that the '357 Patent was a continuation rather than a continuation-in-part, when ruling on a Rule 12 motion, the Court must take the facts alleged as true and construe them in the light most favorable to nonmovants. *Hicks v. Small*, 69 F.3d 967, 969 (9th Cir.1995). Under this lens, the Court can reasonably infer that Seville and its prosecution attorney engaged in conduct with the intent to deceive the PTO. As such, the Court **DENIES** the Motion to Strike on the issue of intent to deceive.

    2.    <u>Materiality</u>

Seville makes a two-pronged argument with respect to this issue of materiality. First, Seville argues the '357 Patent was properly designated as a continuation, precluding any possible finding of inequitable conduct. (Mot. to Strike 8.) At this premature stage, the Court refrains from deciding whether "new matter" was added in the '511 Application such that it should have been disclosed to the examiner as a continuation-in-part. Ascertaining whether the figure in question is "new matter" that replaced a figure in the '986 Application, or is instead "nothing more than three copies of the storage rack. . . placed side by side" is an issue best left for claim construction. As such, the Court finds that Neatfreak has plead sufficient factual allegations to plausibly show that the '357 Patent improperly claims "new matter" not included in the '986 Application.

Second, Seville contends that the alleged mis-designation was immaterial because "statements by a patent applicant or his attorney characterizing or describing information that is already before the PTO do not constitute inequitable conduct." (Mot. to Strike 11.) Seville's *per se* immateriality argument lacks support. As a preliminary matter, Neatfreak alleges that Seville and its prosecution attorney failed to disclose the '750 Publication as prior art to the examiner through two Information Disclosure Statements ("IDSes"), demonstrating conduct that is readily distinguishable from incorrectly characterizing or describing a reference actually disclosed to the examiner. (Countercl. ¶¶ 51-52.) Indeed, the cases Seville cites in support of its argument are distinguishable on this basis. *Cf. Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008) (finding counsel's representations regarding possible prior art to be "mere attorney argument"); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348-49 (Fed. Cir. 2007) (attorney clarification of prior art in the context of re-examination); *Akzo N.V. v. U.S. Int'l Trade Comm'n.*, 808 F.2d 1471, 1482 (Fed. Cir. 1986) (attorney attempt to distinguish prior art). Here, Neatfreak is alleging mis-designations with regards to documents filed with the USPTO, not statements by the patent attorney attempting to distinguish prior art. (*See* Countercl. ¶¶ 39-40.)

Additionally, these cases were decided prior to the codification of 37 C.F.R. section 1.78, and thus have little relevance to the issue of whether omitting a statement required under this regulation can be material. The legislative history behind 78 Fed. Reg. 11,040-41, on the other hand, suggests that such an omission can be material: "Patent applicants would need to pay higher

**CASE NO.:** <u>CV 15-06237 SJO (ASx)</u>　　　**DATE:** <u>April 1, 2016</u>

filing fees. . . if [USPTO] personnel were required to independently determine the effective filing date. . . As a result of the statement requirement, the [USPTO] and the public will have greater certainty as to whether any resulting patent is an AIA or pre-AIA patent." 78 Fed. Reg. 11,040-41. Based on this statement and Neatfreak's allegations, it is plausible that failing to submit a 1.78 Statement would cause an examiner to improperly apply the pre-AIA framework. As such, Neatfreak has sufficiently plead that, but-for Seville's misrepresentation or omission, the '357 Patent would have been reviewed under AIA rules and would have been found invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103. (Countercl. ¶ 54.)

Consequently, the Court **DENIES** the Motion to Strike on the issue of materiality.

### 3. Conclusion

For the foregoing reasons, the Court **DENIES** Seville's Motion to Strike.

### B. Motion to Sever and Stay Claims Against Target

In the Motion to Sever, Netfreak requests that the Court to sever and stay claims against Target and any unnamed retailer defendants pending resolution of Seville's patent infringement claims against Netfreak. (*See generally* Mot. to Sever, ECF No. 55.) In support of its motion, Netfreak contends that neither the "same product" nor "same transaction" requirement of Section 299 is met, for Seville has not limited the accused products to the Threshold brand shelves and because Netfreak and Target are in a "supplier-customer" relationship. (*See* Mot. to Sever 8-13.)

### 1. Severance

While the Federal Circuit has not yet issued a precedential decision interpreting Section 229(a), at least three courts in this district and several courts around the country have concluded that Section 299's "'same transaction, occurrence, or series of transactions or occurrences' requirement is not satisfied merely because retail defendants are alleged to have sold the same infringing products." *Sillage*, 2015 WL 3649605, at *4 (concluding that "direct competitors at the same level of commerce cannot be properly joined as patent infringement defendants under § 299" where no conspiracy is alleged); *see also Mednovus, Inc. v. QinetiQ Grp. PLC*, No. 2:12-cv-03487-ODW(JCx), 2012 WL 4513539, at *2-3 (C.D. Cal. Oct. 1, 2012) (finding misjoinder where the "only related transactions between [developer of technology, licensor, and distributors] are those transactions within the commerce stream"); *Digitech Image Techs., LLC v. Agfaphoto Holding GmbH*, No. 8:12-cv-1153-ODW (MRWx), 2012 WL 4513805, at *3-4 (C.D. Cal. Oct. 1, 2012) (finding misjoinder where plaintiff sued digital camera manufacturers including Leica and retailers including Best Buy and target, for "these transactions within the commerce stream do not

CASE NO.:  CV 15-06237 SJO (ASx)            DATE: April 1, 2016

constitute the same transaction or series of transactions"); *Richmond v. Lumisol Elec. Ltd.*, Civ. Action No. 13-1944(MLC), 2014 WL 1716447, at *3 (D.N.J. Aug. 30, 2014) (concluding that "all claims against downstream defendants who will be indemnified by upstream defendants in all twelve actions should be stayed pending the revolution of the issues as to the upstream defendants," for under these circumstances "the indemnifying defendant is 'the real party in interest' for the purposes of the patent infringement claims, and the indemnified defendant is peripheral"); *Broadband iTv, Inc. v. Hawaiian Telecom, Inc.*, Civ. No. 14-00169 ACK-RLP, 2014 WL 5580967, at *6 (D. Haw. Oct. 30, 2014) ("This Court agrees with those district courts which have held that competitors cannot be joined in a patent infringement suit under § 299 where they are not alleged to have conspired or acted in concert.").

Seville cites a single case from the Southern District of Florida that Seville argues is "directly on point." (Sever Opp'n 8, ECF No. 59.) In *Omega Patents, LLC v. Skypatrol, LLC*, the court found joinder proper where "[p]laintiff's claims for infringement arise out of the same series of transaction or occurrences in that [defendant] Enfora manufactures a product that allegedly infringes the patents in question and then provides the product to [defendant] Skypatrol, who reconfigures, modifies, and rebrands the same product—using information and documentation provided by Enfora—for distribution under its own name." No. 1:11-cv-24201-KMM, 2012 WL 2339320, at *2 (S.D. Fla. June 19, 2012). The court noted that "[i]nherent in this relationship are common questions of fact, such as the nature of the guidance and modifications Skypatrol provides its users relative to the asserted claims against Enfora, and the design and functionality of the product Enforce provides to Skypatrol." *Id.*

Tellingly, Seville in its opposition omits the critical language regarding the unique relationship between Enfora and Skypatrol in *Omega Patents*. (*See* Sever Opp'n 8.) In the FAC, Seville alleges that "Netfreak supplies its products to numerous retailers in the United States and this District, including Target" and that "Netfreak manufactured and/or imported, and sold the products identified in [various paragraphs] to Target." (FAC ¶¶ 10, 17.) Nowhere in the FAC does Seville allege any relationship between Netfreak and Target beyond that of a simple supplier and retailer. Accordingly, the Court follows the overwhelming majority of cases in holding that retail defendant Target was improperly joined pursuant to Section 299(a), and severs Seville's patent infringement claims against Netfreak from those against Target.

The Court also finds that a stay of Seville's infringement claims against Target and the doe retail defendants is warranted in this case, because (1) these retail defendants are peripheral to the substantive infringement liability claims against Netfreak; (2) the Motion to Sever was brought early in the litigation; and (3) a stay would simplify the issues and result in judicial economy. Indeed, a stay as to the retail defendants is particularly warranted where, as here, (1) Netfreak has declared that it has agreed to indemnify Target and a second retailer that is, at least to date, not

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 15-06237 SJO (ASx) | **DATE:** April 1, 2016 |

named in this action, The Home Depot, with respect to the accused products; and (2) Target has agreed to be bound by the results of the related case against upstream defendants NGC and NGI. (Decl. Kirk Sabo in Supp. Mot. to Sever ¶ 8; Decl. Nick Crnkovich in Supp. Mot. to Sever ¶ 4.); *see Sillage*, 2015 WL 3649605, at *6 (finding a stay against downstream retail defendants justified "largely because each retail defendant has agreed to be bound by the results of litigation against [the upstream defendant]").

Moreover, because the Motion to Sever was brought early in the litigation, before a scheduling conference has been held and a trial date set, it does not appear that Seville will be materially prejudiced by the requested stay. *See Sillage*, 2015 WL 3649605, at *7. The Court additionally notes that any possible prejudice to Seville can be avoided by requiring Target to respond to discovery requests to the extent they are relevant to the action against Netfreak. *Id.* (citing *Refac Int'l, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986) (noting that a stay order "expressly provide[d] [the plaintiff] with discovery to determine whether any separated defendant is a manufacturer"); *Telebrands Corp. v. Nat'l Express, Inc.*, No. 12-6671(FSH), 2014 WL 4930897, at *6 (D.N.J. Oct. 2, 2014) (staying cases against downstream defendants but "not[ing] that the Retail Defendants are still obligated to any relevant discovery requests propounded upon them as part of the manufacturer actions"). This ruling contemplates Target responding to discovery requests concerning sales and other damages-related information, which would be relevant to settlement discussions. This ruling does not, however, compel Target to comply with requests concerning willful infringement, as the FAC contains no factual allegations concerning Target's alleged willful infringement or any involvement in Netfreak's purported redesign process.

IV. <u>RULING</u>

For the foregoing reasons, the Court (1) **DENIES** Plaintiff Seville Classics, Inc.'s Motion to Strike Neatfreak's Inequitable Conduct Defense and to Dismiss Count II of Neatfreak's First Amended Complaint; and (2) **GRANTS** Defendants Netfreak Group, Inc. and Netfreak Group Corp.'s Motion to Sever and to Stay Claims Against Target Corporation and Does 1-10. Target is nevertheless directed to respond to reasonable third-party discovery requests in the litigation against Netfreak.

IT IS SO ORDERED.